No. 13207

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

STATE ex rel. THE MONTANA POWER COMPANY,

Petitioner,

-vs-

DEPARTMENT OF PUBLIC SERVICE REGULATION,
PUBLIC SERVICE COMMISSION, and MONTANA
CONSUMER COUNSEL, GEOFFREY L. BRAZIER,

Respondents.

ORIGINAL PROCEEDING:

Counsel of Record:

For Petitioner

Kendrick Smith argued, Butte, Montana
Robert D. Corette, John J. Burke and Mark
A. Clark appeared, Butte, Montana

For Respondents:

Geoffrey L. Brazier argued, Helena, Montana
William E. O'Leary argued, Helena, Montana
Russell L. Doty Jr. argued, Helena, Montana
Patrick Gilfeather appeared, Helena, Montana

Submitted: November 14, 1975

Decided: DEC 3 0 1975

Filed: DEC 3 0 1975

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is a petition for a writ of review or other appropriate writ to require the Montana Public Service Commission to grant petitioner's motion for a temporary approval of a natural gas increase.

On March 12, 1975, Montana Power Company, hereinafter called petitioner, filed with the Montana Public Service Commission, hereinafter referred to as the Commission, a petition to increase rates and charges for electric and natural gas services and to change certain regulations concerning them. Those matters became Docket No. 6348 of the Commission.

The Commission set hearing on Docket No. 6348 for September 8, 1975, but this was cancelled and did not commence until October 20, 1975. A second phase of the hearings was set for January 12, 1976. In the meantime, the Commission scheduled "satellite hearings" in nine cities in the state.

To not be repetitious and to fully understand the factual issues involved here reference is made to this Court's opinion dated October 17, 1975, entitled Montana Consumer Counsel, Geoffrey L. Brazier v. Public Service Commission of Montana et al. and The Montana Power Co., _____Mont._____, 541 P.2d 769, 32 St.Rep. 1026. In that case this Court approved the use by the Public Service Commission of the so-called "automatic adjustment clause" as applied to the rapidly rising costs of imported Canadian gas.

Pending a decision of the Commission Docket 6348, petitioner on September 23, 1975, filed a motion for temporary approval of gas rate increases subject to rebate. This motion inter alia gave these reasons for the request:

> "1. The temporary rate increase requested herein is required to, but will not completely, offset the increased cost to the Applicant of obtaining a natural gas supply to serve its consumers, which cost has increased drastically due to actions by the National Government of Canada.

- 2 -

"2. The cause for these higher gas costs is shown in Appendix 'C', attached hereto and incorporated herein, which contains the Orders of the Canadian Government increasing the border price. (These Orders are also contained in Applicant's Exhibits Nos. 3, 4, 5 and 6, 'Export Licenses' which were filed with the Commission in this Docket on June 12, 1975). These documents show that the National Government of Canada has ordered that the border price for gas exported from Canada shall be increased from $1.00 to $1.40 per million BTU effective August 1, 1975, and to $1.60 per million BTU effective November 1, 1975.

"3. Commencing on August 1, 1975, due to these Orders of the Canadian Government, the Applicant's average monthly cost of purchased gas and royalty increased approximately one million two hundred thousand dollars ($1,200,000). Commencing on December 1, 1975, there will be a further monthly increase of approximately six hundred thousand dollars ($600,000), for a total increase of approximately one million eight hundred thousand dollars ($1,800,000) per month. Applicant must immediately be allowed to pass through these higher costs for this gas acquired for and supplied to Montana gas consumers or it will be unable to continue making these necessary expenditures.

"4. On July 24, 1975, the Federal Power Commission issued an Order in its Docket No. CP74-187, a copy of which is attached as Appendix 'D' and incorporated herein. The Federal Power Commission in that Order authorized the Applicant to import natural gas from Canada at the increased border prices of $1.40 per million BTU, effective August 1, 1975, and $1.60 per million BTU, effective November 1, 1975.

"5. Applicant's Exhibit No. 15, Revised 7/18/75 ('Gas Utility Return'), a copy of which is attached hereto as Appendix 'E' and incorporated herein, shows that under present rates the Applicant would sustain a loss during the test year 1975 of $13,031,968 due to the maximum impact of increased purchased gas cost and royalty expenses."

This motion of September 23 was noticed for hearing October 2, 1975 and was argued on that date. The Commission on October 20 postponed a decision until October 30. On October 31, 1975, the Commission issued its order granting only a portion, 6/11ths, of the amount requested. The order granted petitioner $6,510,791 as a temporary increase and denied the remainder, which in effect petitioner alleges precludes it from recovering over 5 million dollars of increased costs annually.

Petitioner alleges the denial of its request by the Commission is:

"a. Contrary to law in that it grants a flow-through (on a temporary approval basis) of only a part of the increased costs of purchased gas and royalty expenses as set forth in the Motion of September 23, 1975, Exhibit 'A';

"b. Contrary to law in that it precludes recovery by a flow-through, and on a temporary approval basis, of all of the increased cost of purchased gas and royalty expenses as set forth in the said Motion of September 23, 1975, Exhibit 'A';

"c. Contrary to law in that it defies the letter and the spirit of the 1974 Rate Order (Order #4147, dated August 30, 1974) and the decision of this Court dated October 17, 1975, in Case No. 12944, entitled Brazier v. PSC and Montana Power, as Intervenor;

"d. Contrary to law in that if the PSC has any discretion in the matter, then the discretion of the PSC has been abused by not granting the full temporary increase;

"e. Contrary to law in that this Order, regardless of other consequences, would be an illegal and advance reduction of allowable expenses in the main rate case;

"f. Contrary to law in that this Order would deprive Petitioner of its property without due process of law."

Petitioner further alleges that unless the motion is granted in its entirety its financial condition will be seriously jeopardized and its ability to secure Canadian gas will be endangered.

In asking for extraordinary relief from this Court, petitioner notes that a review of the Commission's decision on the merits of Docket 6348 will take until the spring of 1976 or later if appeals are involved, and this is too late to provide the immediate and necessary relief asked for. Further, that in failing to grant the petitioner's motion the Commission's order is pure confiscation, for once petitioner is not allowed to collect during the intervening period, it can never collect for that period and it would suffer a disastrous revenue impairment and loss of financial ability.

On November 7, 1975, this Court issued an alternative writ to show cause and set the hearing for November 14, 1975. Motions to quash and dismiss, answers and memorandums of authority were filed

by all counsel and the matter was argued November 14, 1975. Following argument this Court ordered the Commission to file with the Court a copy of its mathematical computations of amounts approved and disapproved for its order of October 31, 1975.

The issue is whether the Commission order filed October 31, 1975, is contrary to the statutory law and its interpretation by this Court, and totally disregards existing contractual commitments of petitioner, and is therefore arbitrary, unreasonable and a denial of petitioner's right of due process.

Respondent Montana Consumer Counsel appeared in opposition to both petitioner and the Commission, arguing that section 70-113, R.C.M. 1947, as amended by Chapter 115 of the Laws of 1975, is unconstitutional in that it authorizes a temporary increase pending a hearing; that the supporting data of petitioner and subsequent court order is misleading, not founded on fact and provides an incomplete picture of petitioner's statistics; and further whether the failure to grant all of the temporary request is contrary to law or constitutes an abuse of discretion. We find no merit to respondent Montana Consumer Counsel's contentions. We note that these arguments in substance were made to this Court in the case of Montana Consumer Counsel v. Public Service Commission and The Montana Power Company, supra, and decided contrary to respondent's position. See: Private Tele-Commun., Inc. v. Illinois Bell Tel. Co., (Ill. 1975), 335 N.E.2d 110. We further note that in all "pass through increases" this Court has been careful to protect the interests of the consumers by allowing each increase subject to rebate if it can be shown that petitioner is obtaining more than it is authorized.

We now look to the Commission's findings of fact, conclusion of law and order to determine whether they disregard contractual obligations of petitioner and are therefore arbitrary, unreasonable and deny petitioner's rights.

"FINDINGS OF FACT

"1. * * *

"2.* * *

"3. The Applicant is a natural gas public utility serving customers within the State of Montana. Applicant's rates for natural gas service are subject to the jurisdiction of this Commission.

"4. Commencing on August 1, 1975, by orders of the Canadian Government, the border price for gas exported from Canada was increased from $1.00 to $1.40 per million BTU's.

"5. Commencing on November 1, 1975, by orders of the Canadian Government, the border price for gas exported from Canada shall be increased from $1.40 to $1.60 per million BTU's.

"6. Applicant contends that the the present rates Applicant's property would be subject to confiscation without due process of law.

"7. Applicant's Appendix E to the motion shows that under the present rates, Applicant would sustain a loss during the test year 1975 of $13,031,968 due to the maximum impact of increased purchased gas cost and royalty expense.

"8. Applicant's Appendix B to the motion shows the unit price of Canadian purchased gas at $1.4241 per MCF and the unit price of Canadian royalty gas at $.5553 per MCF for the month of August, 1975.

"9. The temporary rate relief increase requested by Applicant for its residential, non-residential and other utility customers was $11,646,283.

"CONCLUSION OF LAW

"1. The Commission has a duty to insure that utilities under its jurisdiction provide reasonably adequate service at just and reasonable rates that are not confiscatory of the utilities' property. Montana (RCM 1947, 70-105)

"2. The Commission may temporarily approve an increase pending a hearing and final decision, with the additional revenues collected subject to rebate. (RCM 1947, 70-113).

"3. In view of the large increases in the price of Canadian purchased gas and Canadian royalty gas, increased rates for Applicant's natural gas distribution service are justified.

"4. The temporary increase approved herein is a just and reasonable amount to insure continued service to Applicant's consumers.

"5. The rate relief requested by Applicant should be granted in part.

- 6 -

"ORDER

"1. Montana Power Company shall file monthly reports indicating its sources and volumes of purchased gas and royalty gas.

"2. Applicant shall be granted a temporary increase for the amount of $6,510,791 for its residential, non-residential and other utility customers. Applicant shall file within ten (10) days of this order, a tariff reflecting this allowance.

"3. This temporary increase shall be spread equally to Applicant's residential, non-residential and other utility customers. Said increase shall be effective for services rendered on and after November 1, 1975.

"4. This is a temporary order. In this regard the Commission, as a matter of policy, will consider temporary requests only in conjunction with full rate case hearings such as that in progress in Docket No. 6348.

"The Commission's intention in granting certain temporary increases herein is primarily to allow time for the thorough consideration of the entire operations of the Company without chancing jeopardizing those operations, due to the Canadian gas and royalty gas increases on export gas.

"5. The additional revenues resulting from this interim order will be subject to rebate plus interest at the rate of return granted the Company in the final order, if the Commission determines at the end of the general rate case that lower rates should become effective.

"6. This temporary order shall be effective only until the initial final order is made, in Docket No. 6348, and shall not be in effect during any appeal therefrom."

We note that conclusion of law No. 3 admits the large increases in Canadian purchased gas and Canadian royalty gas and such increased rates are justified, yet no finding or justification was made on the granting of the partial amount. For this reason this Court requested and obtained the Commission's mathematical computations. Accompanying these computations was a letter to the Court from the chairman of the Commission, which stated in pertinent part:

"The response includes:
    a) Simple calculations indicating how the $5,135,492 and $6,510,791 figures were derived.

    b) Revised Exhibit 2(from the one filed with you on Friday) with a greater explanation of the sources and methodology used in arriving at those figures.

- 7 -

c) 'Yellow' worksheet indicating that if 96.8% of the gas from Aden were Royalty gas, the Montana Power Company could cut its Canadian gas price by $5,135,492 (or the amount of temporary increase not allowed by this Commission). This 'yellow' worksheet does not include price reductions which could accrue from either the elimination of increased Montana purchased gas costs or from the tax effect."

Using this letter and taking specifically paragraph (c) it becomes obvious the Commission made a managerial decision as to the "take or pay" contracts of petitioner for Canadian imported gas from the Aden field and in so doing made an arbitrary decision beyond the scope of its powers.

Petitioner in its Exhibit "D" submitted to the Commission noted:

"A 'take or pay' obligation requires payment for a certain volume of gas whether or not delivery of that volume is actually taken. By way of explanation of the list, the annotation 'none' means that the contract contains no 'take or pay' provision. Five of the 28 contracts contain no 'take or pay' provision. The annotation '85%' means the contract contains a provision which established a 'take or pay' obligation at 85% of the level taken in the same month in the preceding year when the cutback of the Aden authorization occurred. The annotation '100 %' means the contract contains a 'take or pay' obligation which was unaffected by the cutback at Aden.

"The summary sheet shows that a total of 5,844 MMCF per year is currently being purchased and imported at Aden. Of this amount, 825 MMCF are not subject to an express, contractual take or pay obligation. However, operating obligations preclude the shutting-in of the wells which produce gas under these five contracts. If the wells in question were shut-in, the pools from which they were producing would be drained by production by others, including the Applicant's subsidiary, Canadian Montana Gas Company."

Accepting the information contained in petitioner's Exhibit "D", for there is no evidence before us to contradict it, and even disregarding the five "no take" contracts, there is no way the Commission could have arrived at its figures except to force the petitioner to break its Canadian "take or pay" contracts.and if petitioner broke such contracts, it would be liable for the contracted gas, its earnings would be diminished, and its consumers deprived of an already diminishing gas supply. Such action is beyond the powers of the Commission.

- 8 -

This Court in Cascade County Consumers Assn. v. Pub. Ser.Comm'n, 144 Mont. 169, 186, 394 P.2d 856, had this to say regarding the powers of the regulatory agencies:

> "This Court has often spoken out against the abuse of power by state boards. In the case of State ex rel. State Board of Equalization v. Kovich, 142 Mont. 201, 383 P.2d 818, we recently said: 'This court has uniformly held that the State Board's actions, if arbitrary, fraudulent, or contrary to law, are void and will be so declared by the courts.'"

This Court is not unaware of the great responsibilities placed on the Public Service Commission to regulate petitioner in such a manner as to provide an adequate gas supply for petitioner's consumers at a reasonable cost and at the same time provide an adequate return to petitioner as provided by law. During a period of extreme inflation this task at times seems impossible, however, the Commission in its actions cannot go beyond its statutory or constitutional powers.

We find the Commission in considering the facts when making its determination and order-

1) disallowed "pass through" costs to the extent that they may become confiscatory, in violation of the constitutional prohibition against taking property without due process of law, and

2) that this constitutes arbitrary action and unjustly denies petitioner the "pass through" costs.

Therefore, we order that the Commission order of October 31, 1975, #4220, be set aside and that petitioner's motion for a temporary approval of a gas increase to correspond with the increased cost of Canadian gas and subject to the final decision of the Commission to rebate, be granted.

_____
                    Justice

- 9 -

We Concur:

_James T. Harrison_
Chief Justice

_Wesley Castles_

_Frank I. Haswell_

_Gene B. Daly_
Justices.